UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LINDA S. SCOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | )    No. 3:12-CV-506 |
| | )    (PHILLIPS/GUYTON) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 12, 13, 17, 18] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14, 15]. Plaintiff Linda S. Scott seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On September 17, 2004, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began March 2, 2003. [Tr. 11]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On August 21, 2007, a hearing was held before an ALJ to review determination of Plaintiff's claim. The ALJ issued and unfavorable decision, and on March 30, 2010, the Appeals Council denied Plaintiff's request

for review.

The Plaintiff filed a case with this Court on May 25, 2010. See Scott v. Astrue, No. 3:10-CV-235. On January 14, 2011, the Court ordered the claim be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), based on a joint motion of both parties requesting remand. The Appeals Council then remanded the case to the ALJ, and on September 13, 2011, the ALJ held a second hearing. [Tr. 1293-1326]. The ALJ issued a decision on October 21, 2011, finding that the Plaintiff was not disabled. The decision of the Commissioner became final when the Appeals Council denied Plaintiff's request for review on July 26, 2012.

I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 2, 2003 through her date last insured of December 31, 2008 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: disc protrusion at L4-5 on right with some nerve root impingement, seronegative rheumatoid arthritis, venous insufficiency, rule out seizure disorder, obesity, carpal tunnel syndrome, major depressive disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20

2

CFR 404.1567(b) except [she] must avoid hazards or temperature extremes; sit or stand for 30 to 60 minutes at a time; only "frequent" use of hands for gross and fine manipulation; understand and remember simple and low level detailed tasks only; some, but no substantial difficulty interacting with the general public; and adapt to only infrequent workplace changes.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 12, 1959 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 2, 2003, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(g)).

[Tr. 1221A-1232].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

3

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

4

404.1520). Plaintiff bears the burden of proof at the first four steps. <u>Walters</u>, 127 F.3d at 529. The burden shifts to the Commissioner at step five. <u>Id.</u> At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. <u>Her v. Comm'r of Soc. Sec.</u>, 203 F.3d 388, 391 (6th Cir. 1999) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987)).

## III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." <u>Blakley v. Comm'r of Soc. Sec.</u>, 581 F.3d 399, 405 (6th Cir. 2009) (citing <u>Key v. Callahan</u>, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Rogers v. Comm'r of Soc. Sec.</u>, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); <u>see also</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison v. NLRB</u>, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. <u>Crisp v. Sec'y of Health & Human Servs.</u>, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice'

5

within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    EVIDENCE

Plaintiff was born in August 1959 and she was forty-nine years of age on the date last

insured.  The relevant period is from March 2, 2003, through December 31, 2008, the date last insured.  Her relevant work experience consists of work as a tax preparer and manager of other tax preparers.  [See Tr. 186].

Plaintiff was treated by numerous physicians during the relevant period for a variety of reported ailments including nerve root impingement, arthritis, venous insufficiency, seizures, obesity, carpal tunnel syndrome, sleep apnea, major depressive disorder, anxiety, and back and shoulder pain.

## V.      POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred in finding that the Plaintiff was not disabled during the relevant period.  Plaintiff argues that the ALJ erred by finding that the Plaintiff's shoulder impairment was not severe.  Plaintiff maintains that the ALJ also erred by finding that the Plaintiff's back impairment did not meet or equal Listing 1.04 relating to spinal disorders.  Finally, the Plaintiff argues that the ALJ erred in making his residual functional capacity ("RFC") determination, by affording insufficient weight and discussion to the findings of certain medical opinions.

The Commissioner responds that the ALJ's conclusion that the Plaintiff was not disabled during the relevant period is supported by substantial evidence.  The Commissioner maintains that the ALJ weighed the evidence in the record and explained his decision appropriately.  The Commissioner argues that the ALJ did not commit any error that would support remand or reversal.

## VI.    ANALYSIS

The Court will address each of the Plaintiff's allegations of error in turn.

### A.    Finding that Shoulder Impairment Was Not Severe

Plaintiff alleges that she suffers from shoulder pain that affects her overall ability to function.  The Plaintiff argues that despite Plaintiff's allegations, the ALJ failed to evaluate Plaintiff's shoulder impairment and erred by not finding the shoulder condition to be severe. [Doc. 13 at 26-28].

The Commissioner maintains that substantial evidence supports the ALJ's finding that the shoulder impairment was non-severe during the relevant period, because Plaintiff's shoulder impairment did not significantly limit her ability to perform work-related functions for at least twelve consecutive months.  Alternatively, the Commissioner submits that any potential error was harmless.  [Doc. 15 at 5].

The Court of Appeals for the Sixth Circuit has construed the step two severity regulation as a "*de minimis* hurdle" in the disability determination process.  Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 428 (6th Cir. 2007) (citing Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988)).  If an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe."  Griffeth, 217 F. App'x at 428.

However, where an ALJ errs in finding a particular impairment to be "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. Meadows v. Comm'r of Soc. Sec., No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)); see also Nejat v. Comm'r of Soc. Sec., 359 Fed. App'x 574, 577 (6th Cir. 2009).

8

The Court finds that the ALJ found the Plaintiff suffered from numerous severe impairments at step two. [Tr. 1224]. The Court finds that, after making this finding, the ALJ continued through the five-step process. [Tr. 1223-32]. The Court further finds that the ALJ considered the Plaintiff's shoulder pain and its effect on her daily activities. [Tr. 1226-27]. The ALJ specifically discussed the Plaintiff's visits to Dr. Smith to address complaints of shoulder pain. [Tr. 1227].

Based upon the foregoing, the Court finds that, even if the ALJ erred by not finding the alleged shoulder impairment to be severe, the error would be harmless because the ALJ found at least one severe impairment was present and continued through the process to address each impairment in determining the claimant's RFC. Accordingly, the Court finds that the Plaintiff's allegation that the ALJ committed reversible error with reference to her alleged shoulder impairment is not well-taken.

**B.      Finding that Plaintiff's Back Impairment Did Not Fulfill Listing 1.04**

Plaintiff also argues that the ALJ erred by failing to find that the Plaintiff's impairments would meet or medically equal Listing 1.04, found in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Plaintiff maintains that the ALJ determined the Plaintiff suffers from severe impairments including disc protrusion at L4-5 on the right with some nerve root impingement, seronegative rheumatoid arthritis, venous insufficiency, rule out seizure disorder, obesity, carpal tunnel syndrome, and major depressive disorder. [Doc. 13 at 24 (citing Tr. 1224)]. Plaintiff submits that this finding supports the conclusion that the Plaintiff fulfills Listing 1.04.

The Commissioner concedes that the Plaintiff's medical records demonstrate some compromise of the nerve root or spinal cord [Doc. 15 at 8 (citing Tr. 274, 608, 635)], but the Commissioner argues that the Plaintiff has failed to demonstrate the other required criteria.

9

Specifically, the Commissioner argues that the Plaintiff has failed to show that her impairment causes: (A) nerve root compression with neuro-anatomically distributed pain, limited spinal motion, motor loss including atrophy or muscle weakness, sensory or reflex loss, and (when the impairment involves the lower back) positive straight-leg raising tests; (B) spinal arachnoiditis; **or** (C) lumbar spinal stenosis resulting in pseudoclaudication manifested by chronic radicular pain and weakness resulting in the inability to ambulate effectively.

Listing 1.04 states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R Part 404, Subpart P, App'x 1, Listing 1.04.

10

In her brief, the Plaintiff argues that she fulfills the criteria of Listing 1.04(A) and/or 1.04(C), not 1.04(B). [See Doc. 13 at 24]. The Plaintiff does not direct the Court to specific evidence fulfilling either 1.04(A) or 1.04(C). Instead, she cites evidence generally that she argues fulfill Listing 1.04. [See Doc. 13 at 25-26]. The Plaintiff maintains that the ALJ did not properly evaluate the Plaintiff's impairments under Listing 1.04.

In analyzing the application of a Listing, the ALJ must "actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." Reynolds v. Comm'r of Soc. Sec., 424 Fed. App'x 411, 416 (6th Cir. 2011). As the Court of Appeals has explained, without meaningful review, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." Id.

The ALJ, in this case, stated, "Section 1.04 has been considered regarding the claimant's spine disorder but the record does not reflect persistent motor loss, atrophy, inability to walk effectively, or other signs/symptoms to meet a listing under section 1." [Tr. 1224]. The undersigned finds that the ALJ's discussion is sufficient to facilitate meaningful review.

Initially, the Court finds that the ALJ's finding that the Plaintiff's medical records did not demonstrate motor loss or atrophy precludes Plaintiff from satisfying Listing 1.04(A). The Court finds that the ALJ's finding with regard to motor loss or atrophy is supported by substantial evidence. "[A] report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(E)(1). The Plaintiff has not cited the Court to any such evidence of atrophy or motor loss.

11

To the contrary, examinations of Plaintiff by treating physicians during the relevant period revealed no atrophy and full (5/5) motor strength. [See Tr. 263, 278, 380, 459, 468, 610]. Plaintiff also often denied any muscular weakness when evaluated by her primary-care physician Dr. Andrew Smith. [See Tr. 324, 331, 344, 349, 355, 361, 380]. The Plaintiff cites several findings of positive straight leg raises by Sivailingam Kanagasegar, M.D., [see Tr. 1044, 1181, 1183], and some sensory loss, [Tr. 263, 280]. There were, however, numerous instances where the straight leg raises were negative. [See Tr. 263, 278, 380, 456]. Moreover, other examining physicians noted no reflex or sensory loss. [See Tr. 280, 362, 380]. The Court, accordingly, finds that substantial evidence supports the ALJ's finding that the Plaintiff's back impairment does not meet or equal Listing 1.04(A).

With regard to Listing 1.04(C), the ALJ found that the Plaintiff did not demonstrate an inability to walk effectively. This finding precluded concluding that the Plaintiff fulfilled Listing 1.04(C). The Court finds that the ALJ's finding that the Plaintiff did not demonstrate an inability to walk effectively and, thus, did not fulfill the criteria of Listing 1.04(C) is supported by substantial evidence.

An inability to ambulate effectively is an "extreme limitation" in the ability to walk. As the applicable regulations explain:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

12

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(b)(1). The applicable regulations recognize that the ability to ambulate with a single cane may be classified as the ability to ambulate effectively. See 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(b)(2). Thus, even if the Plaintiff's subjective complaints that she needs a cane were fully credited, they do not necessitate a finding that she cannot effectively ambulate.

The evidence in the record indicates that Eugenio Vargas, M.D., prescribed a cane at Plaintiff's request and based only upon her subjective complaints. [Tr. 261]. The record is full of findings from both treating and examining sources finding that Plaintiff's gait was normal and that she could walk normally without assistance. [See Tr. 301, 319, 321, 325, 331, 344, 349, 373, 377, 386, 389, 1026, 1143, 1148, 1151, 1274].

Based upon the foregoing, the Court finds that the ALJ evaluated the evidence in the record, compare it to Listing 1.04, and gave an explained conclusion. The Court finds that he, thereby, facilitated meaningful judicial review. The Court finds that the Plaintiff's allegation that the ALJ committed reversible error with reference to Listing 1.04 is not well-taken.

## C. Medical Source Opinions

The Plaintiff argues that the ALJ did not afford appropriate weight to the opinions of two medical sources: Berta Bergia, M.D., and Victoria Nellums, L.C.S.W.

### 1. Berta Bergia, M.D.

It is undisputed that Dr. Bergia was Plaintiff's treating neurologist from November 2002 through August 2007. Dr. Bergia is board certified in neurology and neurophysiology, who saw the Plaintiff primarily to address her seizures but also to address complaints of chronic migraine headaches, fatigue, depression, dizziness, facial pain, weakness and numbness in the arms and legs, right leg pain, history of lupus, bilateral carpal tunnel syndrome, costochondritis,

13

neuropathy, maylgias, thoracic neuralgia, low back pain, herniated disc in the lumbar spine, rheumatoid arthritis, and anxiety.

On December 11, 2002, Dr. Bergia obtained nerve conduction studies which revealed moderately severe left carpal tunnel syndrome. [Tr. 842-878]. On August 4, 2004, Dr. Bergia obtained nerve conduction studies which noted findings of underlying neuropathy and right carpal tunnel syndrome. [Tr. 862-64]. On July 13, 2005, Dr. Bergia obtained EMG which noted findings of right S1 radiculopathy based on mild prolongation of right tibial H-reflex. [Tr. 607]. On October 5, 2005, MRI of Plaintiff's lumbar spine revealed a right para-midline focal disc protrusion at L4-5, significantly displacing the right L5 nerve root posteriorly. [Tr. 274, 608]. During November 2005, Dr. Bergia referred Plaintiff to Dr. Vargas for neurosurgical evaluation of a longstanding history of worsening low back pain and right lower extremity pain. [Tr. 646-50].

On August 8, 2007, Dr. Bergia completed a short-answer worksheet entitled: "Medical Assessment of Ability to Do Work-Related Activities (Physical)." There, Dr. Bergia opined Plaintiff can occasionally lift/carry a maximum of five to ten pounds; can stand/walk for a total of about two to three hours in an eight-hour workday and can do so without interruption; can sit for a total of three to four hours in an eight-hour workday and can do so without interruption for about four hours; can never climb, stoop, kneel, balance, crouch, or crawl; is limited in her ability to reach, handle, feel, and push/pull; and suffers environmental restrictions in regard to exposure to heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. [Tr. 269-70]. She found that the Plaintiff's ability to reach, handle, push/pull, and feel were also affected by the Plaintiff's impairments. [Tr. 270].

To support her assessment, Dr. Bergia noted Plaintiff's back pain secondary to HNP at

14

L4-5 with right-sided disc protrusion displacing the L5 nerve root, as documented by MRI in October 2005; chronic headaches; gait disorder; and non-epileptic seizures. [Tr. 269-70].

The Plaintiff argues that the ALJ erred by affording only some weight to Dr. Bergia's findings in the "Medical Assessment" worksheet.

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

15

In stating the weight afforded to Dr. Bergia's findings, the ALJ explained:

> As for the opinion evidence the undersigned does not find Dr. Bergia's determinations credible with regard to the claimant's ability to do work-related activities. Her conclusions are inconsistent with her examination and are not supported by objective medical findings or treating progress notes of record. In spite of an MRI that indicated a disc protrusion with possible nerve root impingement, the claimant has only received conservative treatments. Furthermore, the claimant's electromyography and nerve conduction studies were unremarkable. Dr. Bergia also indicated in her records that the claimant's chronic headaches were stable and controlled with medication compliance, and although an EEG captured seizure activity, it was non-epileptic, and there were no epileptic abnormalities. Furthermore, Dr. Bergia's records indicate that the seizure activity was more than likely secondary to stress disorder and, possibly, due to the claimant's numerous medications. Considering the foregoing, Dr. Bergia's assessment is incredibly over-restrictive, and thus internally inconsistent. Accordingly, the undersigned does not accept Dr. Bergia's conclusions with regard to the claimant's residual functional capacity, and gives her opinion only some weight to the extent it supports the residual functional capacity above stated.

[Tr. 1229]. More generally, the ALJ discussed conservative treatment by Dr. Vargas [Tr. 1228], along with her treatment with Dr. Bergia and Dr. Kanagasegar. [Tr. 1227].

The ALJ ultimately concluded that the Plaintiff retained the RFC to "perform light work as defined in 20 CFR 404.1567(b)[1] except [she] must avoid hazards or temperature extremes; sit or stand for 30 to 60 minutes at a time; only 'frequent' use of hands for gross and fine manipulation; understand and remember simple and low level detailed tasks only; some, but no substantial difficulty interacting with the general public; and adapt to only infrequent workplace changes." [Tr. 1226 (internal citation added)].

The Plaintiff has not cited the Court to any portions of Dr. Bergia's findings that she

---

[1] See 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. ")

believes should have been afforded additional weight. It appears to the Court that the ALJ did not credit Dr. Bergia's findings to the extent the ALJ found that Plaintiff could perform light work, and thus, found that the Plaintiff could frequently, rather than occasionally, carry five to ten pounds. The ALJ also did not fully credit Dr. Bergia's indication that the Plaintiff's handling might be limited when the ALJ found that Plaintiff could frequently use hands for gross and find manipulation. Though light work would entail more overall sitting and standing than indicated by Dr. Bergia, the Court would note that the ALJ found that the Plaintiff far was more restricted in her ability to sit and stand for a specific period, than Dr. Bergia had indicated.[2]

First, the Court finds that the ALJ's decision to not fully credit all of Dr. Bergia's findings in the "Medical Assessment" is supported by substantial evidence in the record. The ALJ did not err by deciding that not all of Dr. Bergia's findings should be afforded controlling weight. Drs. Robert Doster and Joe Allison reviewed the record and opined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, stand/walk for approximately six hours per day, and sit for approximately six hours per day. [Tr. 718, 787, 793].

In addition, other physicians who treated the Plaintiff found Plaintiff to be much less restricted in her activities. Eugenio Vargas, M.D., a neurosurgeon, initially engaged in only conservative treatment, including steroid injections. [Tr. 261]. Moreover, Dr. Vargas indicated that the Plaintiff requested a walking cane, rather than him finding a cane was necessary after a physical examination. He explained, "Ms. Scott has asked whether or not I could give her a prescription for a walking cane and I see no problem with that." [Id.]. At a follow-up visit on June 7, 2006, Plaintiff visited Dr. Vargas with complaints of more acute back pain. Dr. Vargas

---

[2] Contra ALJ's finding that the Plaintiff can sit for thirty to sixty minutes at a time, with Dr. Bergia's finding that she can stand for two to three hours without interruption and can sit for four hours without interruption.

suggested diagnostic diskograms to determine whether Plaintiff should pursue surgery. [Tr. 263]. Plaintiff declined because of her daughter's wedding, and there is no indication in the record that she ever underwent the diskograms or surgery. [Tr. 264].

Treatment notes from Plaintiff's family physician Andrew L. Smith, M.D., indicate that the Plaintiff had no limitation in her range of motion [Tr. 319, 380], denied joint pain [Tr. 386, 389], and denied back pain [Tr. 324, 331, 344, 349, 355], during visits in 2006 and 2007. Similarly, Segar Sivalingham Kanagasegar, M.D., found that the Plaintiff had only "mild tenderness around the lumbar spine," [Tr. 293], and he recommended diet, regular exercise, and weight loss as components of treating this condition.

Moreover, Plaintiff's self-reports to staff at Methodist Medical Center, during the relevant period [see Tr. 1075], included a level of physical activities that is entirely inconsistent with the physical limitations found by Dr. Bergia. For example, the Plaintiff reported:

> Tolerating medication well with no medication side effects. Great trip recently with mother in Michigan doing geneology work. Pt. said that she had a good time with her from Germany. . . . Mood has been "terrible[."] She describes herself as a "B----[."] She said that her disability is stressing her out to no end. She is awaiting the records form [sic] this office for the disability. . . . She said her home was broken into recently. She was at a campground with her grandchildren while the house was broken into. She said that the baby shower went well and she was late. When she was done with the baby shower went camping. Wonderful time. . . .

[Tr. 1123].

Based upon the foregoing, the Court finds that the ALJ's decision not to afford full weight to Dr. Bergia's findings was supported by substantial evidence. The Court turns next to whether the ALJ provided "good reasons" explaining his decision not to fully credit Dr. Bergia's findings.

18

The Court finds that the ALJ provided "good reasons" explaining his decision not to fully credit Dr. Bergia's findings. The ALJ discussed the nature and extent of the Plaintiff's treatment, noting that the Plaintiff received only conservative treatment. 20 C.F.R. §§ 404.1527(c)(2)(ii). The ALJ also discussed the relevant medical evidence in the record, including the Plaintiff's electromyography and nerve conduction studies, her EEG, and her MRI. §§ 404.1527(c)(3). Moreover, the ALJ considered the lack of consistency between Dr. Bergia's findings and the record as a whole, including the likelihood that Plaintiff's non-epileptic seizures were caused by the use of multiple medications and the records indicating Plaintiff's headaches were stable. §§ 404.1527(c)(4).

The Court finds that the ALJ's decision contains specific reasons for the weight given to Dr. Bergia's findings, is supported by evidence in the case record, and is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). The Court finds that the ALJ did not err in affording weight to Dr. Bergia's opinions.

In the alternative, however, the Court finds that – even if the ALJ did not supply "good reasons" that fully and wholly satisfy the "good reasons" requirement – the ALJ has otherwise met the regulation's goal by rendering a decision that is supported by substantial evidence and that provides the Plaintiff with an explanation for that decision. See Gayheart v. Comm'r of Soc.Sec., 710 F.3d 365, 380 (6th Cir. 2013) (citing Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004)).

2.      *Victoria Nellums, L.C.S.W.*

On June 15, 2005, Victoria Nellums, L.C.S.W., completed a short-answer, multiple-choice form entitled "Mental Residual Functional Capacity Questionnaire," based upon a visit

with the Plaintiff on May 2, 2005. Ms. Nellums indicated that the Plaintiff had a current GAF of 35 and that she was in treatment for major depression and mental health fluctuations in response to familial difficulties. [Tr. 653]. The third page of the Questionnaire listed sixteen "mental abilities and aptitudes needed to do unskilled work." [Tr. 655]. Examples of the abilities include: understand and remember very short and simple instructions; make simple work-related decisions, ask simple questions or request assistance, and make simple work-related decisions. Ms. Nellums checked the most severe of the five options available, indicating that the Plaintiff had "no useful ability to function" in any of the sixteen areas. [Id.].

The ALJ explained the weight afforded to Ms. Nellums's findings as follows:

> As appropriate under SSR 06-3p, the undersigned has also considered the opinion of Victoria Nellums LCSW who essentially opined the claimant had no useful ability to function except for the ability to adhere to basic standards of neatness and cleanliness. Ms. Nellums assessed a current global assessment of functioning of 35, indicating major impairments, and a GAF of 60, which indicates only moderate symptoms, as the highest for the year. Furthermore, Ms. Nellums opined that the gravity of the claimant's symptoms were contingent on her familial issues and situations. (Exhibit F, pages 274-278). As a licensed clinical social worker, Ms. Nellums is not considered an "acceptable medical source" under the Regulations, in determining the severity of the claimant's impairments and how it affects her ability to work. The undersigned, however, has taken into account the nature and extent of her relationship with the claimant, her qualifications and education, her areas of specialty and expertise, and whether her opinion is consistent with other evidence (Social Security Ruling 06-03). A provider who has seen the claimant in a professional capacity regarding her impairments, can be uniquely positioned to opined on the severity of the claimant's conditions and how they affect the claimant's ability to function, but in this instance, records indicate that Ms. Nellums only treated the claimant from July 2005 through November 2005, and then again in March 2006 (Exhibit F, pages 461-470). Furthermore, Ms. Nellums'[s] opinion is clearly inconsistent with the objective medical evidence, and clearly inconsistent with the claimant's admissions of her daily activities of paying bills, shopping, housekeeping, cooking,

20

balancing a checkbook, using a computer, reading, crocheting, taking her husband to appointments, and driving. Futhermore, her opinion is inconsistent with the medical records of claimant's treating psychiatrist, Dr. Burress. Considering the foregoing, Ms. Nellums'[s] opinion is overly restrictive, and her conclusions are, at best, tenuous, patently sympathetic to the claimant's subjective complaints, and unsupported by the objective findings. The undersigned, therefore, gives Ms. Nellums'[s] opinion little weight.

[Tr. 1229]. In related discussion, the ALJ further noted, "Since December 27, 2007, the claimant continued mental health treatment with psychiatrist Dr. Burress, and in March 2008, records indicate that the claimant was stable and getting better (Exhibit 7F, page 889)." [Tr. 1228].

Ms. Nellums is not an "acceptable medical source." See 20 C.F.R. §§ 404.1513(d)(1). Because she is not an "acceptable medical source," Ms. Nellums's opinion cannot establish a medically determinable impairment and it is not entitled to controlling weight. Yoakem v. Comm'r of Soc. Sec., 2011 WL 5870827, at *10 (S.D. Ohio Aug. 22, 2011) (noting that a social worker's report is "not entitled to controlling weight, nor is it treated as a medical opinion"). The ALJ must, nonetheless, evaluate Ms. Nellums's findings using the same factors used to evaluate medical opinions. See SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006); Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007).

The Plaintiff's discussion of the alleged error relating to Ms. Nellums is interconnected with her discussion of the alleged error relating to Dr. Bergia. [See Doc. 13 at 22]. She does little to distinguish the different standards applicable to Dr. Bergia. Plaintiff, however, submits "[h]ad proper weight been accorded to LCSW Nellums' opinion, a finding of disability could have been reached . . . ." [Id.]. Plaintiff does not identify any specific finding contained in the "Mental Residual Functional Capacity Questionnaire," that should have been afforded additional weight, nor does she direct the Court to evidence in the record supporting these highly-restrictive

21

findings. [See Doc. 13 at 21-23].

The Court finds that the ALJ's decision not to afford little weight to Ms. Nellums's findings is supported by substantial evidence. Moreover, the Court finds that the ALJ properly appropriately considered the factors outlined in 20 C.F.R. § 404.1527(c). Consistent with ALJ 20 C.F.R. § 404.1527(c)(4), the ALJ found that Ms. Nellums's opinion deserved little weight because the opinion conflicted with Plaintiff's daily activities. Plaintiff admitted to shopping, paying bills, crocheting, and driving. [Tr. 116-17, 743, 1227, 1312]. These activities demonstrate an ability to comprehend and comply with simple instructions, and thus, they directly conflict with the findings made by Ms. Nellums. Further, the ALJ considered the treatment notes of Roger Dale Burress, M.D., which indicated that the Plaintiff was getting better in accordance with 20 C.F.R. § 404.1527(c)(2)(i) & (3). The ALJ also observed that Ms. Nellums lacked the specialty and training of Plaintiff's physicians, see § 404.1527(c)(5), and that she only engaged in limited treatment of Plaintiff, see § 404.1527(c)(2)(i).

Accordingly, the Court finds that the ALJ's decision to afford little weight to Ms. Nellums's findings was rendered in accordance with the Commissioner's regulations and is supported by substantial evidence.

The Court finds that the Plaintiff's allegation that the ALJ committed reversible error with reference to the above-discussed medical opinions is not well-taken.

22

## VII.    CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work with certain enumerated limitations. Substantial evidence supports the ALJ's findings and conclusions.    Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motions For Summary Judgment **[Docs. 12, 17]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 14]** be **GRANTED**.

Respectfully submitted,


_____ s/ H. Bruce Guyton _____
United States Magistrate Judge

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).